# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL L. KILGORE,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. EDCV 17-00249-AFM<br><br>**MEMORANDUM OPINION AND ORDER AFFIRMING THE DECISION OF THE COMMISSIONER** |

    Plaintiff filed this action seeking review of the Commissioner's final decision denying his applications for disability insurance benefits and supplemental security income. In accordance with the Court's case management order, the parties have filed memorandum briefs addressing the merits of the disputed issues. This matter now is ready for decision.

## BACKGROUND

    On October 28, 2012, Plaintiff applied for disability insurance benefits and supplemental security income, alleging that he became disabled and unable to work on October 4, 2008. Plaintiff's claims were denied initially and on reconsideration. Administrative Law Judge ("ALJ") Lawrence J. Duran conducted a hearing on June 21, 2013, at which Plaintiff, his attorney, and a vocational expert ("VE") were

present. (Administrative Record ("AR") 47-99.) After ALJ Duran issued an unfavorable decision, the Appeals Council granted review, vacated the unfavorable decision, and remanded the matter for further proceedings. (AR 245-247.) A new hearing was held on January 5, 2016 before ALJ Lynn Ginsberg. Plaintiff, his attorney, and a VE were present. (AR 100-171.) ALJ Ginsberg issued a written decision on August 3, 2016, again finding Plaintiff not disabled. (AR 20-46.) The Appeals Council denied review on December 14, 2016 (AR 1-2), rendering that decision the final decision of the Commissioner.

## DISPUTED ISSUES

1. Whether the ALJ exceeded the scope of the Appeal Council's remand order.
2. Whether the ALJ's residual functional capacity ("RFC") assessment is supported by substantial evidence.
3. Whether the ALJ erred at Step Four of the sequential evaluation.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

///

///

2

# DISCUSSION

**1. Whether ALJ Ginsberg exceeded the scope of the Appeals Council's remand order.**

In the initial decision denying benefits, ALJ Duran assessed Plaintiff with the RFC to perform a restricted range of light work. (AR 234.) Accepting the testimony of the VE, ALJ Duran found that based upon those limitations, Plaintiff could perform his past relevant work as a president. (AR 239.) The Appeals Council reversed ALJ Duran's disability determination, finding that the ALJ erred in relying on the VE's testimony because the record lacked sufficient information that Plaintiff had ever worked as a president. It remanded the matter to the ALJ with directions to obtain supplemental evidence from a vocational expert. In addition, the Appeals Council directed the ALJ to "offer the claimant an opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision." (AR 246-247.) After conducting a new hearing on remand, ALJ Ginsberg assessed Plaintiff with the RFC to perform a limited range of medium work. (AR 27-28.)

Plaintiff contends ALJ Ginsberg exceeded the scope of the Appeals Council's remand by reassessing Plaintiff's RFC. Plaintiff, however, raised this argument to the Appeals Council when he appealed ALJ Ginsberg's decision. (AR 533-535.) The Appeals Council denied review. (AR 1-2.) By so doing, the Appeals Council necessarily concluded that the ALJ's action was consistent with its remand order. *See generally* 20 C.F.R. § 404.977(b) (the ALJ shall take any action ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order). Thus, Plaintiff's claim lacks factual support.

Furthermore, the Court may not reverse a final disability decision based upon an ALJ's alleged failure to follow a remand order. *See Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1136–1138 (9th Cir. 2011) (district court erred in

awarding benefits based upon ALJ's failure to follow remand orders from the Appeals Council and from the district court because the issue is whether the claimant was disabled); *Lopez v. Colvin*, 2014 WL 1370672, at *2 n.3 (C.D. Cal. Apr. 7, 2014) (plaintiff cannot prevail based upon a claim that the ALJ failed to comply with a remand order, rather "the issue before this Court is whether the ALJ's decision is based on substantial evidence and is free of legal error"); *Lara v. Colvin*, 2013 WL 5520220, at *2 (C.D. Cal. Oct. 3, 2013) (ALJ's failure to follow remand order is not a proper basis for a reversal or remand of the ALJ's final decision regarding disability); *see also Hamlin v. Barnhart*, 365 F.3d 1208, 1224 (10th Cir. 2004) (on remand, "[i]t was certainly within the ALJ's province, upon reexamining [claimant]'s record, to revise his RFC category.").

**2.   Whether the ALJ's RFC determination is supported by substantial evidence.**

The ALJ found that Plaintiff suffered from the following severe impairments: disc protrusion at L4-S1 with spondylosis at L5-S1; cervical radiculopathy; right shoulder impingement; thoracic sprain/stain with degenerative disc disease; lumbar sprain/strain with radiculopathy to right lower extremity; chronic neck and lower back pain due to multilevel disc herniation; myocardial infarction status post coronary artery bypass graft X3; diabetes mellitus; hypertension; neuropathy, personality disorder; major depression; and marijuana abuse. (AR 26.) The ALJ then determined that Plaintiff retained the RCF to perform medium work, except

> [He] can lift and/or carry 50 pounds occasionally and 25 pounds frequently. He can stand and/or walk for six hours out of an eight-hour workday with regular breaks. He can sit for six hours out of an eight-hour workday with regular breaks. He can frequently push and pull bilaterally with the lower extremities. He can frequently push and pull bilaterally with the upper extremities. He can never climb ladders, robes, or scaffolds. He can frequently climb ramps and stairs, balance,

stoop, kneel, crouch, and crawl. He can frequently reach bilaterally in all directions, including overhead. He can frequently handle and finger bilaterally. He can occasionally feel bilaterally. He can occasionally have exposure to temperature extremes of hot and cold, wetness or humidity, and excessive vibration. He can have occasional exposure to environmental irritants such as fumes, odors, dusts, and gases. He can have occasional exposure to poorly ventilated areas. He can have occasional use of moving hazardous machinery. He can have occasional exposure to unprotected heights. He can have occasional interaction with the public.

(AR 27.)

In reaching her conclusion, the ALJ considered the following relevant evidence:

- The objective diagnostic evidence, including physical examinations, magnetic resonance imaging (MRI), X-rays, ultrasounds, and nerve conduction velocity testing. (*See* AR 31-32, 550-551, 605, 647, 747-754, 767, 855-858, 890-893, 943-946.)
- The February 2012 report of consultative examiner Ulin Sargeant, M.D., who conducted a complete examination of Plaintiff and opined that Plaintiff could perform a range of medium work. (AR 32, 36, 644-649.)
- The decisions of state agency medical consultants, who opined that Plaintiff could perform a range of medium work. (AR 36, 172-187, 189-204, 217-223.)
- The report of consultative examiner Azizollah Karamlou, M.D., who opined that Plaintiff could perform medium work with the exception that he could only frequently perform fine manipulation as a result of radiculopathy. (AR 36, 1313-1323.)
- The January 2011 report of consultative examiner Jason E. Groomer,

- D.O., who opined that Plaintiff should avoid overhead reaching or work with the right upper extremity; could lift no more than 10 pounds with the right upper extremity once or twice an hour at most; could perform limited bending, twisting, and repetitive lifting from floor to waist; could lift no more than 40 pounds; and could carry 50 pounds from floor to waist. (AR 35, 599-612.)
- The November 2009 report of medical evaluator Michael J. Einbund, M.D., conducted in connection with Plaintiff's workers' compensation case, opining that Plaintiff "should be precluded from heavy lifting and repetitive neck flexion or extension with regard to his neck and spine." (AR 35, 747- 771.)

The ALJ gave great weight to the opinions of Dr. Sargeant and the state agency medical consultants, finding that they were supported by the other evidence in the record, including the objective diagnostic testing showing "no nerve root impingement or severe stenosis"; the lack of aggressive treatment received; and Plaintiff's daily activities. (AR 36.) These opinions constitute substantial evidence supporting the ALJ's RFC assessment. *See Ruiz v. Colvin*, 638 F. App'x. 604, 606 (9th Cir. 2016) (ALJ did not err in giving the greatest weight to non-examining state agency medical consultants because "the ALJ found their opinions consistent with the greater medical record, progress and treating notes, and [the plaintiff]'s description of her daily activities"); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (the opinion of consultative examining physician may constitute substantial evidence supporting ALJ's RFC assessment because it is based on his own independent examination of claimant); *Hilburn v. Berryhill*, 2017 WL 4877267, at *4 (C.D. Cal. Oct. 27, 2017) (same).

The ALJ interpreted Dr. Einbund's opinion that Plaintiff was precluded from heavy lifting as a conclusion that Plaintiff could lift and carry up to 50 pounds. (AR 35.) As the ALJ explained, under workers' compensation cases, a limitation on

heavy lifting contemplates a 50 percent loss in pre-injury capacity. Because Plaintiff's past work involved lifting 100 pounds, Dr. Einbund effectively opined that Plaintiff was precluded from lifting or carrying more than 50 pounds, a conclusion consistent with the ALJ's RFC. (AR 35.) The ALJ did not give great weight to Dr. Einbund's opinion that Plaintiff was precluded from repetitive neck flexion or extension because she found the opinion inconsistent with the objective medical evidence which demonstrated that Plaintiff's range of motion in his neck was not significantly limited. (AR 35.) The record supports the ALJ's conclusion. (*See*, *e.g.*, AR 607, 647, 752.)

The ALJ gave little weight to Dr. Groomer's opinion, reasoning that the record demonstrated that Plaintiff had improvement of his grip strength following Dr. Groomer's examination; there was no evidence of neurological deficits when Plaintiff was examined in February 2012 and January 2013; and the lack of regular medical treatment after January 2013 suggested that Plaintiff's condition was not as limiting as alleged. (AR 35, 647-648.) The ALJ also gave little weight Dr. Long's opinion that Plaintiff was effectively precluded from performing any work, finding it vague and lacking in objective support. As the ALJ explained, Dr. Long failed to point to any objective clinical or diagnostic findings to support his assessment of extreme limitations. (AR 36.) As an example, the ALJ pointed out that Dr. Long opined that Plaintiff could rarely lift even 10 pounds, yet Plaintiff estimated that he could lift approximately 45 pounds. (AR 36, 602.) The ALJ further discredited Dr. Long's opinion on the basis that it was not from an acceptable medical source. (AR 36; citing 20 C.F.R. § 404.1513(a)(e).)

The ALJ gave great weight to the opinion of Dr. Karamlou. The ALJ acknowledged that Dr. Karamlou's examination took place in 2015, after the date last insured, but explained that Dr. Karamlou had the benefit of reviewing Plaintiff's medical record. Further, the ALJ found that Dr. Karamlou's opinion was supported by objective diagnostic findings showing moderate to severe

degenerative disc disease of the cervical spine and degenerative disc disease of the lumbar spine, but no severe stenosis or nerve root impingement. (AR 36.) In addition, the ALJ noted that Dr. Karamlou's opinion was consistent with Dr. Sargeant's examination finding improvements in Plaintiff's full grip strength as well as Plaintiff's normal neurological examination. (AR 36, 647-648.)

Plaintiff argues that the ALJ erred by giving great weight to Dr. Karamlou's opinion because Dr. Karamlou examined Plaintiff more than a year and a half after Plaintiff's date last insured expired. Plaintiff concedes that the ALJ is entitled to rely upon a retrospective diagnosis and therefore that Dr. Karamlou's opinion could serve as the basis for the ALJ's RFC. (ECF No. 22 at 14.) *See Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) (medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition). Nevertheless, Plaintiff contends that the ALJ afforded Dr. Karamlou's opinion too much weight. According to Plaintiff, despite Dr. Karamlou's statement that he had reviewed "all medical records," Dr. Karamlou failed to cite exhibit numbers or provide a "meaningful analysis of the evidence." (ECF No. 22 at 15.)

Although the ALJ could have found Dr. Karamlou's opinion less persuasive based upon his failure to provide a particularized discussion of Plaintiff's medical records, it was not error for the ALJ to credit his opinion. Notwithstanding Plaintiff's insinuation, there is no reason to doubt the veracity of Dr. Karamlou's representation that he reviewed Plaintiff's records; nor is there any requirement that Dr. Karamlou's report include a written discussion of those records before his opinion is entitled to weight.

Furthermore, even without Dr. Karamlou's report, the ALJ's RFC assessment is supported by substantial evidence – namely, the opinions of Dr. Sargeant and the state agency medical examiners. Plaintiff does not contend that the ALJ committed error in relying on those physician opinions. Instead, Plaintiff's argument is that the Appeals Council did not "explicitly order [the ALJ] to re-evaluate Plaintiff's

residual functional capacity" on remand, yet ALJ Ginsberg did so. (ECF No. 22 at 15.) Plaintiff apparently believes that ALJ Ginsberg's RFC should be reversed because ALJ Duran's RFC assessment was a better interpretation of the medical evidence. As discussed, however, the Court's review is limited to determining whether the Commissioner's final disability determination – in this case, the determination made by ALJ Ginsberg on remand – is free from legal error and supported by substantial evidence. It may not reverse the ALJ's RFC assessment simply because a different interpretation of the medical evidence was possible. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (where the ALJ's interpretation of the record is reasonable, it should not be second-guessed).

Last, Plaintiff argues that, in assessing Dr. Groomer's opinion, the ALJ improperly considered Plaintiff's lack of medical treatment for pain after January 2013. As Plaintiff points out, he testified that he did not have medical insurance and had difficulty affording treatment. (AR 113-114, 118-119.) The ALJ provided several reasons for her decision to give "little weight" to Dr. Groomer's opinion. Specifically, the ALJ explained that (1) with regard to Plaintiff's upper extremity limitation, the medical evidence revealed that Plaintiff had an improvement in grip strength following Dr. Groomer's evaluation; (2) there was no evidence of neurological deficits in examinations in 2012 and 2013; and (3) the "lack of regular medical treatment after January of 2013 suggests that the claimant's condition was not as limiting as alleged." (AR 35.)

Plaintiff is correct that an ALJ may not draw a negative inference from a lack of treatment where the claimant could not afford treatment. *See Regennitter v. Comm'r Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999) ("we have proscribed the rejection of a claimant's complaints for lack of treatment when the

record establishes that the claimant could not afford it"). Assuming that the ALJ erred by doing so here, the error was harmless because it was but one of several reasons the ALJ relied upon in rejecting the opinion of consultative examiner Dr. Groomer.

For the foregoing reasons, substantial evidence supports the ALJ's RFC assessment.

**3.    Whether the ALJ erred at Step Four.**

At Step Four, the claimant bears the burden of showing that he or she does not have the residual functional capacity to engage in "past relevant work." 20 C.F.R. §§ 404.1520(e) & 416.920(e); *Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2001); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Past relevant work is defined as work that the claimant has "done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560. Past relevant work can be part time, *Katz v. Secretary of HHS*, 972 F.2d 290, 292 (9th Cir. 1992), unpaid, *Keyes v. Sullivan*, 894 F.2d 1053, 1056 (9th Cir. 1990), or performed on a substitute basis, *Byington v. Chater*, 76 F.3d 246, 250 (9th Cir. 1996). *See De La Barcena v. Colvin*, 2013 WL 5924563, at *3 (C.D. Cal. Nov. 1, 2013). It need only require significant mental and physical activities to be substantial. 20 C.F.R. §§ 404.1572(a), 416.972(a). Further, to be gainful, it need only be the kind of work "usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §§ 404.1572(b), 416.972(b).

Where, as here, the claimant's prior work was self-employment, the ALJ looks to one of three tests to determine whether the work constituted substantial gainful activity. *Olea v. Colvin*, 2013 WL 5539386, at *3 (C.D. Cal. Oct. 8, 2013) (citing Social Security Ruling ("SSR") 83–34; 20 C.F.R. § 404.1575; 20 C.F.R. § 416.975); *Le v. Astrue*, 540 F. Supp. 2d 1144, 1149–1150 (C.D. Cal. 2008).

///

///

**Substantial evidence supports the ALJ's finding.**

In finding Plaintiff not disabled, the ALJ determined that Plaintiff could perform his past work as a chief executive officer ("CEO") of website development. (AR 38.) Applying test two of the SSR, and considering Plaintiff's testimony and the other evidence in the record, the ALJ found that Plaintiff's CEO work was substantial gainful activity because the work he performed was similar to that of an unimpaired person in the community. (AR 39 (citing 20 C.F.R. § 404.1575 and SSR 83-84).) Plaintiff contends that the ALJ's finding at Step Four is not supported by substantial evidence. (ECF No. 22 at 16.) The record contains the following evidence related to Plaintiff's work as a CEO.

Plaintiff was self-employed as the CEO of his web development company from 2000 to 2005. (AR 108-109, 505-507, 509.)[1] Plaintiff testified that he also worked as an inspector for the Boeing Company during that time, and his salary was based upon his inspector position. (AR 108-109, 388.) According to Plaintiff, his CEO position involved travelling on assignments, but after he had heart surgery in 2000, Plaintiff was restricted from flying for an unspecified length of time. Then, after the events of September 11, 2001, Boeing diverted money from Plaintiff's company. (AR 110-111, 508.) The company never made money. (AR 107-108, 506-509.)

During the hearing, the ALJ inquired about Plaintiff's skills, duties and responsibilities as CEO to determine whether Plaintiff performed each of the tasks associated with the job of CEO as described in the DOT. In response, Plaintiff testified that he was involved in the business operations and management of the company, and that his duties included developing business plans and new projects, planning business objectives, reviewing financial statements, formulating financial

---

[1] Although Plaintiff testified that he performed this job from 1999 to 2003 (AR 109), he concedes in his brief that the correct time frame is 2000 to 2005 as indicated in other parts of the record. (ECF No. 17 at 16.)

strategies, planning and developing industrial labor and public relation policies, and evaluating the performance of executives. (AR 107-109.)

Plaintiff further testified that when he was trying to get his business "off the ground" he spent eight, ten, and sometimes fourteen hours a day working on his software. He did this four or five days a week. Plaintiff estimated that he would "go on a four, five day run maybe once every two weeks." (AR 133.) When he was not programming, Plaintiff spent his time "map plotting" or creating storyboards for webpage layout. He testified that it could take "hours just to do one page." (AR 134.) As part of his job, Plaintiff traveled to Seattle and Huntington Beach. (AR 110.) Plaintiff also worked on other projects for his company. He described one project as building an internet service provider company, and explained that he performed the marketing, the website design, the creation of all the animation processes, setting up the servers, and other administrative tasks, all of which he said he was "certified" to perform. (AR 135-136.)

Finally, the VE testified that Plaintiff's past relevant work included a CEO of website development and confirmed that Plaintiff performed the job consistently with the definition of DOT 189.117-026.[2] (AR 148.)

---

[2] The DOT uses the title "President" rather than "CEO" and describes the job as follows:

> Plans, develops, and establishes policies and objectives of business organization in accordance with board directives and corporation charter: Confers with company officials to plan business objectives, to develop organizational policies to coordinate functions and operations between divisions and departments, and to establish responsibilities and procedures for attaining objectives. Reviews activity reports and financial statements to determine progress and status in attaining objectives and revises objectives and plans in accordance with current conditions. Directs and coordinates formulation of financial programs to provide funding for new or continuing operations to maximize returns on investments, and to increase productivity. Plans and develops industrial, labor, and public relations policies designed to improve company's image and relations with customers, employees, stockholders, and public. Evaluates performance of executives for compliance with established policies and objectives of firm and contributions in attaining objectives.

In determining whether Plaintiff's work as CEO constituted substantial gainful activity, the ALJ appropriately considered whether Plaintiff's work activity, in terms of factors such as skills, duties and responsibilities, was comparable to that of an unimpaired individuals in the community. (AR 38-39; 20 C.F.R. § 404.1575(a)(2)(ii).)

Nevertheless, Plaintiff argues that the ALJ erred in finding his work as a CEO to be substantial gainful activity because the "evidence simply does not suggest that [Plaintiff] worked long enough to learn how to do the job." (ECF No. 22 at 17.) He points out that the DOT states that the CEO occupation involves a Specific Vocational Preparation Level of 8, which generally takes over four years and up to ten years to learn. (ECF No. 22 at 17; AR 539.) Plaintiff asserts that although he performed the CEO job from 2000 to 2005, much of his time was spent performing his job as an inspector and he took a "long hiatus" after open-heart surgery. Furthermore, Plaintiff points out that his company "failed." (ECF No. 22 at 17; AR 110.) According to Plaintiff, "[i]f he had learned the job, presumably the company would have survived or at least [made] some money." (ECF No. 22 at 17.)

The Commissioner argues that Plaintiff waived this issue by failing to raise it at the time of his hearing. (ECF No. 25 at 12-13 (citing *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999)).) The law precluding judicial review based upon a claimant's failure to present an issue to the ALJ is not clearly settled. *Compare Sims v. Apfel*, 530 U.S. 103, 112 (2000) ("Claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues."); *Kim v. Berryhill*,

---

May preside over board of directors. May serve as chairman of committees, such as management, executive, engineering, and sales.

DOT 189.117-026.

2018 WL 626206, at *5 (C.D. Cal. Jan. 30, 2018) (declining to apply *Meanel* to preclude judicial review based upon claimant's failure to raise issue at administrative hearing); *Norris v. Colvin*, 2013 WL 5379507, at *3 (C.D. Cal. Sept. 25, 2013) (claimants "need not preserve issues in proceedings before the Commissioner or her delegates"); *with Phillips v. Colvin*, 593 F. App'x. 683, 684 (9th Cir. 2015) (finding that issue of whether plaintiff had engaged in substantial gainful activity "was waived by [plaintiff's] failure to raise it at the administrative level when he was represented by counsel"); *Nash v. Colvin*, 2016 WL 4059617, at *4 (C.D. Cal. July 27, 2016) (finding waiver based upon failure to raise issue at hearing). Accordingly, the Court declines to find that Plaintiff's claim is forfeited.

Nevertheless, Plaintiff's assertion that the record "does not suggest that he worked long enough to learn how to do the job" lacks merit. As set forth above, the record demonstrates that Plaintiff performed his CEO job for five years, sometimes spending eight or more hours a day developing his projects, and that his duties and skills were significant. Notwithstanding Plaintiff's "hiatus" after his surgery or the fact that Plaintiff spent time performing his inspector job at the same time he was CEO, the record shows that Plaintiff performed numerous skilled tasks and never indicated that he lacked the skill or understanding to perform them. Moreover, the actual time spent doing the job is only one factor relevant to the ultimate determination. *See generally* 20 C.F.R. § 404.1573 ("While the time you spend in work is important, we will not decide whether or not you are doing substantial gainful activity only on that basis. We will still evaluate the work to decide whether it is substantial and gainful regardless of whether you spend more time or less time at the job than workers who are not impaired and who are doing similar work as a regular means of their livelihood."). Finally, to the extent that Plaintiff's argument implies that the success (or failure) of his business is determinative of the question whether he performed substantial gainful employment, it also fails. *See Keyes*, 894 F.2d at 1056 (in assessing the gainfulness of the claimant's activities, the question

is whether "it is the kind of work usually done for pay or profit," not whether "a profit is realized") (citing 20 C.F.R. § 404.1572(b)).

For the foregoing reasons, the ALJ's determination that Plaintiff's past work included the work of CEO is supported by substantial evidence. *See Byington v. Chater*, 76 F.3d 246, 249–250 (9th Cir. 1996) (holding that the ALJ correctly determined that claimant's auto shop activities amounted to substantial gainful activity based upon the numbers of hours worked, the duties claimant performed, and his level of responsibility, and reiterating that claimant's self-employed earnings were not determinative) (citing 20 C.F.R. § 404.1575(a)); *Munos Contreras v. Colvin*, 2016 WL 6088526, at *8 (S.D. Cal. Sept. 13, 2016) (ALJ did not err in finding claimant's work assembling artificial flowers amounted to substantial gainful activity, noting that "work may still be substantial even if it is done on a part-time basis" and that "work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized") (internal citations and quotation marks omitted), *report and recommendation adopted*, 2016 WL 6082344 (S.D. Cal. Oct. 17, 2016).

Plaintiff essentially requests that the Court reweigh the evidence and reach a different conclusion from that reached by the ALJ. This, of course, the Court may not do. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, [the court] may not substitute [its] judgment for that of the ALJ.").

**The ALJ resolved any conflict between the VE's testimony and the DOT.**

Plaintiff points out that the DOT description of the CEO job requires the "temperament" to deal with people, a "significant" amount of negotiating with people, and frequent talking and hearing. (ECF No. 22 at 17-18 (citing AR 540).) Plaintiff contends that the DOT description conflicts with the ALJ's RFC limiting Plaintiff to occasional interaction with the public, and therefore, the ALJ erred by relying on the VE's testimony that Plaintiff could perform his past work as CEO.

"When there is an apparent conflict between the vocational expert's testimony and the DOT – for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle – the ALJ is required to reconcile the inconsistency." *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015) (citing *Massachi v. Astrue*, 486 F.3d 1149, 1153–1154 (9th Cir. 2007)).

Contrary to Plaintiff's argument, the record confirms that the ALJ fulfilled her obligation. When the ALJ asked the VE to consider a hypothetical individual with the RFC she ultimately concluded that Plaintiff possessed, the VE testified that the hypothetical individual would be able to perform Plaintiff's past relevant work as a CEO of website development. (AR 148-150.) The ALJ then specifically questioned the VE about whether Plaintiff's limitation to occasional interaction with the public was consistent with the requirements of his past CEO work and the VE answered affirmatively. The VE explained that a CEO would not interact with the general public. The VE further explained that although a CEO would occasionally meet with persons whom he was attempting to do business with, those meetings generally would occur over the telephone or through correspondence on the internet. (AR 154-155.) Thus, any purported conflict with the DOT was specifically addressed and resolved by the ALJ.

**ORDER**

For the foregoing reasons, IT IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

DATED: 3/22/2018

ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE